857 F.2d 1230
 57 USLW 2248, 10 Employee Benefits Ca 1111,
10 Employee Benefits Ca 1560
 UNION ASPHALTS AND ROADOILS, INC.; Patricia M. Lorenz;
David M. Lorenz; David Dill, Appellants,
v.
MO-KAN TEAMSTERS PENSION FUND; Karl Rogers, Trustee;
Richard Milone, Trustee; Robert Gillihan, Trustee; Gayle
D. Starling, Trustee; James Duvall, Trustee; Richard
Knipp, Trustee; Frank J. Mobley, Trustee; William W.
Weeks; American Benefit Plan Administration, Inc., Appellees.
MO-KAN TEAMSTERS PENSION FUND; Karl Rogers; Richard
Milone; Robert Gillihan; Gayle D. Starling; Michael
Rogers; James Duvall; Richard Knipp; Leo Zahner, III;
and William W. Weeks, Trustees of the MO-KAN Teamsters
Pension Fund, Appellees,
v.
UNION ASPHALTS AND ROADOILS, INC.; Patricia M. Lorenz;
David M. Lorenz; David Dill, Appellants.
 No. 87-2307.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 11, 1988.
Decided Sept. 30, 1988.
Rehearing and Rehearing En Banc Denied Nov. 21, 1988.
 
 Richard Miller, Kansas City, Mo., for appellants.
 Albert J. Yonke, Kansas City, Mo., for appellees.
 Before FAGG and WOLLMAN, Circuit Judges, and RE,* Chief Judge.
 FAGG, Circuit Judge.
 
 
 1
 Union Asphalts and Roadoils, Inc. (UA) appeals from the district court's order granting summary judgment in favor of MO-KAN Teamsters Pension Fund (Fund), a multiemployer pension plan. The district court held UA was subject to withdrawal liability under the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA or the Act), Pub.L. No. 96-364, 94 Stat. 1208 (codified at scattered sections in 5, 26, and 29 U.S.C.). We affirm.
 
 
 2
 Until 1982, UA distributed road oils and asphalt materials to contractors and governmental agencies involved in road construction and repair. UA employees delivered these materials in UA trucks to the buyer's job site or storage area. Occasionally, UA delivered its product to the buyer by common carrier. In 1982, the refinery that supplied UA closed. UA was unable to find an alternate supplier and, consequently, went out of business.
 
 
 3
 While UA was in operation, its employees were members of Local Union No. 541, affiliated with the International Brotherhood of Teamsters, Chauffers, Warehousemen & Helpers of America, Independent (Union). As required by the collective bargaining agreement between UA and the Union, UA made payments to the Fund to provide pension benefits for UA employees. When UA ceased operations, it stopped contributing to the Fund. Because the Fund believed UA had completely withdrawn from the plan, the Fund assessed withdrawal liability against UA under MPPAA, 29 U.S.C. Secs. 1381(a), 1383(a). UA challenged the assessment and demanded arbitration under the Act. See id. Sec. 1401(a)(1). In the interim, UA began making payments to the Fund. See id. Sec. 1401(d).
 
 
 4
 After an evidentiary hearing, an arbitrator determined that UA had not withdrawn from the Fund because UA came within the building and construction industry exception of MPPAA, id. Sec. 1383(b). Thus, the arbitrator ordered the Fund to return UA's previous payments.
 
 
 5
 The Fund filed a complaint in federal district court seeking to vacate the arbitrator's award; UA filed a complaint to enforce the award. See id. Sec. 1401(b)(2). After careful review, the district court rejected the arbitrator's determination that UA came within the statutory exception for the building and construction industry. Thus, the court held UA subject to withdrawal liability. UA appeals.
 
 
 6
 Congress enacted the Employee Retirement Income Security Act of 1974 (ERISA), Pub.L. No. 93-406, 88 Stat. 829 (codified as amended at scattered sections in 5, 18, 26, and 29 U.S.C.), to regulate private retirement pension plans. Because ERISA did not adequately protect multiemployer pension plans when employers terminated their participation in those plans, Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 722, 104 S.Ct. 2709, 2714, 81 L.Ed.2d 601 (1984), Congress amended ERISA by enacting MPPAA. Under MPPAA, when an employer completely withdraws from a multiemployer pension plan, that employer must pay a sum determined by the particular fund under guidelines set by Congress. See 29 U.S.C. Secs. 1381, 1382, 1391. This payment, labeled as the withdrawal liability, id. Sec. 1381, protects the financial stability of the plan. See H.R.Rep. No. 869, 96th Cong., 2d Sess., pt. 1, at 67, reprinted in 1980 U.S.Code Cong. & Admin.News 2918, 2935 (Report ).
 
 
 7
 Under certain circumstances, however, the Act excuses employers in the building and construction industry from withdrawal liability. For example, an employer in the building and construction industry that goes out of business does not have to pay withdrawal liability to a multiemployer pension plan at that time. Report, supra, at 75-76, U.S.Code Cong. & Admin.News at 2943-44.
 
 
 8
 While section 1383(a) defines "complete withdrawal" for most employers, section 1383(b) defines complete withdrawal for an employer in the building and construction industry. Section 1383(b) provides:
 
 
 9
 (1) Notwithstanding [section 1383(a) ], in the case of an employer that has an obligation to contribute under a plan for work performed in the building and construction industry, a complete withdrawal occurs only as described in paragraph (2), if--
 
 
 10
 (A) substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry, and
 
 
 11
 (B) the plan--
 
 
 12
 (i) primarily covers employees in the building and construction industry * * *.(2) A withdrawal occurs under this paragraph if--
 
 
 13
 (A) an employer ceases to have an obligation to contribute under the plan, and
 
 
 14
 (B) the employer--
 
 
 15
 (i) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or
 
 
 16
 (ii) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.
 
 
 17
 Id. Sec. 1383(b)(1)-(2). In the present case, UA maintains that it comes within the statutory exception because UA is an employer "in the building and construction industry." See id. Sec. 1383(b)(1). Thus, UA contends it is not subject to withdrawal liability.
 
 
 18
 The parties have stipulated that the Fund primarily covers employees in the building and construction industry. See id. Sec. 1383(b)(1)(B)(i). Further, although UA no longer has an obligation to contribute to the Fund, see id. Sec. 1383(b)(2)(A), UA also has ceased operations, see id. Sec. 1383(b)(2)(B). Thus, the issue here is whether substantially all of the employees for which UA had an obligation to contribute had performed work in the building and construction industry. See id. Sec. 1383(b)(1)(A). If so, UA did not completely withdraw as defined in section 1383(b) and is not subject to withdrawal liability. If the contrary is true, however, UA fails to come within the statutory exception and remains subject to withdrawal liability. See id. Secs. 1381, 1383(a). We turn to examine this issue.
 
 I. Standard of Review
 
 19
 MPPAA provides that any party may seek "to enforce, vacate, or modify the arbitrator's award" in federal district court. Id. Sec. 1401(b)(2). On judicial review, the district court must accept the arbitrator's findings of fact as correct unless rebutted by a clear preponderance of the evidence. Id. Sec. 1401(c). The district court in the present case found the Fund had not rebutted the presumption and thus accepted the arbitrator's factual findings.
 
 
 20
 The district court, however, indicated it was not bound by the arbitrator's legal interpretation of the statutory exception, and we agree. Under MPPAA, the district court has full review of the arbitrator's legal determinations. See Trustees of the Amalgamated Ins. Fund v. Geltman Indus., Inc., 784 F.2d 926, 928-29 (9th Cir.), cert. denied, 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986); Board of Trustees of the W. Conference of Teamsters Pension Trust Fund v. Thompson Bldg. Materials, Inc., 749 F.2d 1396, 1405-06 (9th Cir.1984), cert. denied, 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 481 (1985); I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus., 727 F.2d 1204, 1207 n. 7 (D.C.Cir.1984) (Stockton Tri Indus.); Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund, 718 F.2d 628, 641 (4th Cir.1983), cert. denied, 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984).
 
 
 21
 UA argues that under MPAA judicial review of the arbitrator's legal determinations should be severely limited. To support its contention, UA relies on United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc., 787 F.2d 128 (3d Cir.1986), aff'd by an equally divided court, 481 U.S. 735, 107 S.Ct. 2171, 95 L.Ed.2d 692 (1987) (United Retail ), Washington Star Co. v. International Typographical Union Negotiated Pension Plan, 729 F.2d 1502 (D.C.Cir.1984), and a reference in section 1401(b)(3) to the Federal Arbitration Act (Arbitration Act), 9 U.S.C. Secs. 1-14. We believe UA's reliance is misplaced.
 
 
 22
 In United Retail and Washington Star Co., the courts did not review an arbitrator's legal determinations; instead, the courts dealt with constitutional issues involving MPPAA. See United Retail, 787 F.2d at 129; Washington Star Co., 729 F.2d at 1503. We do not believe either decision can be characterized as designating a standard for review of the arbitrator's legal determinations. See United Retail, 787 F.2d at 135 n. 9 (passing remark in a footnote); Washington Star Co., 729 F.2d at 1505 (introductory outline of section 1401 that did not mention Stockton Tri Industries, 727 F.2d at 1207 n. 7). Thus, although UA looks to United Retail and Washington Star Co. for support, the courts in those cases did not decide the current issue.
 
 
 23
 Finally, UA correctly points out that under the Arbitration Act, 9 U.S.C. Sec. 10, the courts have extremely limited review of an arbitrator's legal determinations. See Stroh Container Co. v. Delphi Indus., Inc., 783 F.2d 743, 751 (8th Cir.), cert. denied, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986). UA contends the Arbitration Act controls here.
 
 
 24
 Section 1401(b)(3) of MPPAA indicates the Arbitration Act, which governs voluntary arbitration, applies only to the extent it is consistent with MPPAA. See 29 U.S.C. Sec. 1401(b)(3). We agree with the Fourth Circuit that "[t]he clear authorization of [section] 1401(b)(2) for judicial review 'to enforce, vacate, or modify the arbitrator's award' gives a right to review an arbitrator's legal rulings." Republic Indus., Inc., 718 F.2d at 641. Thus, the severely limited review required by section 10 of the Arbitration Act is inconsistent with section 1401(b)(2) of MPPAA, and the latter prevails. We conclude that on judicial review of an arbitrator's decision under MPPAA the courts may fully review the arbitrator's legal determinations.
 
 
 25
 II. Building and Construction Industry Exception
 
 
 26
 The term "building and construction industry" is not defined in MPPAA. Congress, in the legislative history, indicated this term should "be given the same meaning as has developed in the administration of the Taft-Hartley Act." Report, supra, at 76, 1980 U.S.Code Cong. & Admin.News at 2944; see Senate Comm. on Labor and Human Resources, 96th Cong., 2d Sess., The Multiemployer Pension Plan Amendments Act of 1980: Summary and Analysis of Consideration 14 (Comm.Print 1980). Like the district court and the arbitrator, we look to case law under section 8(f) of the Taft-Hartley Act, 29 U.S.C. Sec. 158(f), which contains the same term. Section 8(f) is applicable to employers "engaged primarily in the building and construction industry." Id.
 
 
 27
 Initially, we note that under section 8(f) the term "building and construction industry" has been construed narrowly because, as in section 1383 of MPPAA, the term is part of a statutory exception. See Frick Co., 141 N.L.R.B. 1204, 1208 (1963). The National Labor Relations Board has generally defined the term as "subsum[ing] the provision of labor whereby materials and constituent parts may be combined on the building site to form, make[,] or build a structure." Carpet, Linoleum, and Soft Tile Local Union No. 1247, 156 N.L.R.B. 951, 959 (1966) (Indio Paint ) (emphasis omitted). Thus, employers who manufacture construction materials that are installed by others at the construction site are not in the building and construction industry. See, e.g., NLRB v. W.L. Rives Co., 328 F.2d 464, 469 (5th Cir.1964) (manufacturer of pipes and fittings made to order but installed by others); Forest City/Dillon-Tecon Pac., 209 N.L.R.B. 867, 868, 870-71 (1974) (manufacturer of precast concrete building products that does no work on job site), enforced in part, 522 F.2d 1107 (9th Cir.1975). Similarly, employers who are involved in the construction process in only a minimal way are not in the building and construction industry. See, e.g., Frick Co., 141 N.L.R.B. at 1208 (employer involved in manufacture and sale of refrigeration equipment with little time spent or revenue obtained from installation of that equipment); see also Construction, Bldg. Materials & Miscellaneous Drivers, Local No. 83, 243 N.L.R.B. 328, 331 (1979) (summarizing these rules).
 
 
 28
 The district court recognized that actual on-site work is not always required for an employer to be in the building and construction industry. See A.L. Adams Constr. Co. v. Georgia Power Co., 733 F.2d 853, 857-58 (11th Cir.1984). For example, a general contractor may subcontract the actual on-site work and only manage the project by overseeing and coordinating the work on the job site. See id. at 858. Even then, however, "a contractor's involvement in the construction must be more than negligible." Id. at 858 n. 12. Thus, work or significant involvement on the construction site is an important indication that the employer is in the building and construction industry. See, e.g., Operating Eng'rs Pension Trust v. Beck Eng'g & Surveying Co., 746 F.2d 557, 562-64 (9th Cir.1984) (ninety percent of employer's surveying work done with regard to construction projects, and thus employer in building and construction industry); Indio Paint, 156 N.L.R.B. at 959 (ninety-three percent of gross revenue derived from providing labor and materials to install floor coverings on job site, and thus employer in building and construction industry).
 
 
 29
 Here, UA was merely a supplier. UA sold a product that another company refined, and still others applied or used. UA employees transported their employer's product from the refinery to the buyer's specified point of delivery, usually the job site. Once at the job site, UA employees discharged the road materials from their trucks to another tank or receiving vessel. The arbitrator specifically found that
 
 
 30
 [i]n discharging their loads, [UA's] employees were responsible only for operating equipment[ ] on their trucks and tractors and doing paper work [indicating they had made delivery]; they did not engage in spreading road oil or asphalt on any highway or in any other way engage in actual road construction or repair.
 
 
 31
 After the UA truck drivers unloaded at the job site, they did not remain. Instead, they returned to the refinery, reloaded, and drove to the next delivery point, whether a job site or storage area. See Forest City/Dillon-Tecon Pac., 209 N.L.R.B. at 871.
 
 
 32
 We have no argument with the arbitrator's finding that UA had some characteristics consistent with companies that are working in the building and construction industry. Nevertheless, MPPAA, 29 U.S.C. Sec. 1383, and the Taft-Hartley Act, 29 U.S.C. Sec. 158(f), require that work be in the building and construction industry, not just connected to that industry, see Hoover, Inc., 240 N.L.R.B. 593, 599 (1979) (connection with the building and construction industry insufficient under section 8(f); the employer must be engaged in building and construction industry); Forest City/Dillon-Tecon Pac., 209 N.L.R.B. at 870-71 (same).
 
 III. Conclusion
 
 33
 In determining that UA came within the statutory exception, the arbitrator failed to give the term "building and construction industry" the same meaning that has been developed under the Taft-Hartley Act. The employer must be in the building and construction industry; it is not enough that the employer is tangentially connected to or affected by that industry. After a careful review of the applicable law, we conclude that UA employees did not perform work in the building and construction industry as required by 29 U.S.C. Sec. 1383(b)(1)(A). Thus, the district court correctly held UA subject to withdrawal liability under the Act. We affirm.
 
 
 
 *
 The HONORABLE EDWARD D. RE, Chief Judge, United States Court of International Trade, sitting by designation