[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 25, 2004
THOMAS K. KAHN
CLERK**

_____

No. 03-10303

_____

D. C. Docket No. 97-06195 CV-JAL

TRUSTEES OF THE CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF OPERATING ENGINEERS AND
PARTICIPATING EMPLOYERS,

Plaintiff-Appellee,

versus

WOLF CRANE SERVICE, INCORPORATED,
a Florida Corporation,

Defendant-Counter
Claimant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 25, 2004)**

Before ANDERSON, CARNES and FAY, Circuit Judges.

PER CURIAM:

Wolf Crane Services, Inc. ("Wolf Crane") appeals the district court's grant of

summary judgment in favor of the Trustees of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Pension Fund").[1]  On appeal, we conclude with respect to Count I that the district court should have reviewed the arbitrator's legal conclusions de novo, and we conclude with respect to Count II that the district court erred in granting summary judgment.

BACKGROUND

In 1989, Wolf Crane negotiated with the Pension Fund and became a contributing employer.  At the time of the negotiations, Pension Fund representatives told Wolf Crane that the fund was solvent and well managed.  Apparently the opposite was true: the federal government took over the Pension Fund in 1991 and appointed trustees.

The last contract between Wolf Crane and the International Union of Operating Engineers ("the Union") expired on July 31, 1996, although the parties had begun negotiating for a new contract sometime before then.  Wolf Crane's last proven payment to the Pension Fund was on June 25, 1996, but its employees continued to work without a contract.  On December 31, 1996, Wolf Crane

---

[1]  This case was initially filed by the International Union of Operating Engineers Local No. 675 Pension Fund.  However, that fund merged with the Central Pension Fund while the action was pending below.  In this opinion, we use Pension Fund to refer collectively to the relevant trustee or trustees as well as the relevant pension fund.

notified the Pension Fund that it would cease operations on that day. The last contract negotiations took place on January 15, 1997, and at approximately the same time, Wolf Crane announced that its facilities were being offered for sale or lease. As a result of the last unsuccessful negotiations, Wolf Crane declared an impasse. At that time, the Pension Fund made a formal demand for withdrawal payments, based on the expiration of the contract and Wolf Crane's continued operations. The next week, Wolf Crane served the Pension Fund with a statutory request for administrative review of the asserted withdrawal liability, which was ultimately rejected.

In February 1997, the Pension Fund filed the instant suit seeking withdrawal liability payments (Count I), minimum funding deficiency payments for 1992 through 1995 (Count II), and an injunction preventing Wolf Crane from alienating its assets. The same day, however, Wolf Crane sold its assets and equipment to another crane company, thus mooting the claim for an injunction.

In June 1997, Wolf Crane notified the Pension Fund that it was seeking arbitration on the withdrawal liability (Count I). The district court administratively closed the case pending the outcome of the arbitration. On February 3, 1999, the arbitrator decided in favor of the Pension Fund on the withdrawal liability issue, and Wolf Crane appealed the arbitrator's award to the district court. The district

court, in April 1999, denied Wolf Crane's motion and affirmed the award, thus resolving Count I involving Wolf Crane's withdrawal liability.

In October 1999, the Pension Fund filed a motion to reopen the matter because the issue in Count II of the complaint, the minimum funding deficiency, had not yet been resolved. On October 16, 2001, the Pension Fund filed a motion for summary judgment on that issue. On August 19, 2002, and after proceedings not relevant to the issues on appeal, the district court granted the Pension Fund's motion for summary judgment on Count II by default because Wolf Crane had not responded to the Fund's motion. After the district court denied reconsideration, it entered a final judgment.[2] Judgment having been entered against Wolf Crane imposing upon it both withdrawal liability (Count I) and liability for minimum funding deficiency (Count II), Wolf Crane appealed. With respect to Count I, the dispositive issue for this appeal is the correct standard of review for a district court in reviewing an arbitrator's award under the Multi-Employer Pension Plan Amendments Act ("MPPAA"). With respect to Count II, the dispositive issue on appeal is whether a district court can grant summary judgment by default because a

_____

[2] Wolf Crane had defended and counterclaimed that it had been fraudulently induced to enter into the pension fund agreement. The district court's final judgment implicitly rejected this defense and counterclaim, which if successful, would have eliminated its liability under both counts.

party has failed to file an opposition to a motion for summary judgment. We address each issue in turn.

### COUNT I: STANDARD OF REVIEW OF ARBITRATORS DECISION UNDER MPPAA

The district court, when reviewing the arbitrator's award on Count I, the withdrawal liability issue, employed the standard of review found in the Federal Arbitration Act. The court stated that it would only disturb the arbitrator's findings of fact if it was "left with the definite and firm conviction that a mistake had been committed." Order at 6 (quoting Anderson v. Bessmer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511 (1985)). Conclusions of law, the court held, should also be given great deference and only reversed if there was manifest disregard for the law. Id. at 7. We hold that the district court applied an incorrect standard of review with regard to the legal conclusions of the arbitrator.

For cases brought under the MPPAA, the standard of review by the district court for factual findings made by the arbitrator is set out at 29 U.S.C. § 1401(c). This subsection states that "there shall be a presumption, rebuttable only by a clear preponderance of the evidence, that the findings of fact made by the arbitrator were correct." 29 U.S.C. § 1401(c). The Seventh Circuit labeled this standard "unique" and noted that it conflated "'clear and convincing evidence' with 'preponderance of

5

the evidence' to yield 'clear preponderance of the evidence,'" a result which "would be bad enough if it referred to the finder of fact." Jos. Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan, 3 F.3d 994, 998 (7th Cir. 1993). The court then "repaired" the standard, holding that the standard of review for facts would be that typically used in the arbitration setting: the reviewing court would inquire as to whether the fact-finding was clearly erroneous. Id. at 999 (citing Anderson v. Bessmer City, 470 U.S. at 573, 105 S.Ct. at 1511). With regard to the standard of review of the arbitrator's findings of fact, we agree with the Seventh Circuit and hold that the standard is clearly erroneous.

The question of what standard is to be applied to legal conclusions of the arbitrator is less clear. However, other courts have agreed upon a standard: all of the circuits that have considered this issue have determined that the review of legal issues should be de novo. Crown Cork & Seal v. Cent. States S.E. & S.W. Areas Pension Fund, 982 F.2d 857, 860 (3d Cir. 1992); Trustees of Colo. Pipe Indus. Pension Trust v. Howard Elec. & Mech., Inc., 909 F.2d 1379, 1386 (10th Cir. 1990); Trustees of Iron Workers Local 473 Pension Trust v. Allied Prod. Corp., 872 F.2d 208, 211-12 (7th Cir. 1989)[3]; Union Asphalts and Roadoils, Inc. v.

---

[3] We note that Jos. Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan, 3 F.3d 994 (7th Cir. 1993), while recognizing that legal conclusions are reviewed de novo, adopts a somewhat modified standard of review for interpretations of the relevant contract. In the instant

6

Mo-Kan Teamsters Pension Fund, 857 F.2d 1230, 1233-34 (8th Cir. 1988); Trustees of Amalgamated Ins. Fund v. Geltman Indus., 784 F.2d 926, 928-29 (9th Cir. 1986); Bd. of Trustees of the W. Conf. v. Thompson Bldg. Mat., 749 F.2d 1390, 1405-06 (9th Cir. 1984); I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus., 727 F.2d 1204, 1207 n.7 and 1210-12 (D.C. Cir. 1984); see also  Sherwin-Williams Co. v. New York State Teamsters Conf. Pension,158 F.3d 387, 393 (6th Cir. 1998) (focusing primarily on review of the arbitrator's findings of fact but also noting that the "arbitrator's application of the appropriate burden of evidence is a question of law we review de novo"); Bowers v. Andrew Weir Shipping, Ltd., 27 F.3d 800, 804 (2d. Cir. 1994) (assuming "as do all the other circuits that have considered the issue" that de novo is the correct standard of review, but not deciding the issue); Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund, 718 F.2d 628, 641 (4th Cir. 1983) (without expressly elaborating on the fullness of judicial review of the arbitrator's legal rulings, the court rejected the Federal Arbitration Act's deferential standard, holding that 29 U.S.C. § 1401(b)(2) prevails and provides "effective judicial review of . . . legal rulings").

---

case, however, it is clear that there are crucial issues which involve legal conclusions of the arbitrator, which the district court should review de novo.

7

In reaching this conclusion, courts have cited 29 U.S.C. § 1401(b)(3), which states that the MPPAA incorporates the Arbitration Act to the extent that it is consistent with other parts of this subchapter. These courts have reasoned that "the limited review of the Arbitration Act (9 U.S.C. § 10) is inconsistent with § 1401(b)(2)'s broad mandate allowing courts to 'enforce, vacate, or modify the arbitrator's award.'" Iron Workers, 872 F.2d at 212 (citing Union Asphalts, 857 F.2d at 1234-35; Republic Industries, 718 F.2d at 641); see also Sanders-Midwest, 857 F.2d at 1234; Amalgamated Ins. Fund, 784 F.2d at 928. Several courts, including the Seventh Circuit in Iron Workers, have also relied upon the fact that the MPPAA statutorily mandates arbitration of withdrawal liability,[4] in contrast to the contractually agreed upon arbitration governed by the Federal Arbitration Act, noting that in the latter, deference was appropriate because it was the parties' agreed upon method of dispute resolution. 872 F.2d at 212; accord Huber v. Casablanca Indus., Inc., 916 F.2d 85, 89 n.4 (3d Cir. 1990), overruled in part on other grounds by Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co., 513 U.S. 414, 115 S.Ct. 981 (1995). The parties' lack of choice was thought to warrant less deference.

---

[4] 29 U.S.C. § 1401(a)(1) provides: "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration."

We join our sister circuits and hold that the appropriate standard of review is clear error for findings of fact and <u>de novo</u> for conclusions of law. Although the district court may have applied the correct clearly erroneous standard for reviewing factual findings, it clearly applied an incorrect standard of review of the arbitrator's legal conclusions. As noted above, the district court applied the very deferential standard that would have been appropriate under the Federal Arbitration Act, and not the <u>de novo</u> standard for legal conclusions which we hold today is the correct standard in this context. Because crucial issues relevant to Count I are legal conclusions, and because the district court employed the incorrect standard of review, we vacate and remand the district court's judgment with regard to the Count I withdrawal liability.[5]

## COUNT II: SUMMARY JUDGMENT AS A SANCTION

We now turn to Wolf Crane's argument with respect to Count II – that the district court erred in granting summary judgment by default because of the district court's perception that Wolf Crane did not respond to the Pension Fund's motion for summary judgment. In <u>United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Florida,</u> 363 F.3d 1099 (11th Cir. 2004), this court was confronted

---

[5] Because of the complexity of the issues involved, and because neither party's brief on appeal was sufficiently enlightening, we suggest that the district court on remand may wish to invite amicus curie briefs from the Pension Benefit Guaranty Corporation or other knowledgeable sources.

with a district court's grant of summary judgment by default because the motion was unopposed. We held that "[t]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." Id. at 1101. We also held that in that context "[i]f a local rule purports to allow summary judgment to be granted by default, the rule is impermissible" because it would be inconsistent with the Federal Rules. Id. at 1102. The court noted that Fed.R.Civ.P. 56(e) provides that where "'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.'" Id. at 1101 (quoting Fed.R.Civ.P. 56(e))(emphasis in the original). The court then held that summary judgment would be appropriate "where the 'pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed.R.Civ.P. 56(c)). After so holding, the court in One Piece of Property reviewed the summary judgment record, concluded that the record did reveal a genuine issue of material fact, and reversed the district court's grant of summary judgment.

In reaching this decision, the One Piece of Property court relied upon dicta in Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir.

10

1988), and upon <u>Jaroma v. Massey</u>, 873 F.2d 17 (1ˢᵗ Cir. 1989). 363 F.3d at 1101-02 (quoting <u>Jaroma</u>, 873 F.2d at 20 ("[T]he district court cannot grant a motion for summary judgment merely for lack of any response by the opposing party, since the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact.")); <u>accord</u> <u>Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev.</u>, 922 F.2d 168, 176 (3d Cir. 1990).

In this case, the district court granted the Pension Fund's motion for summary judgment on Count II by default, because of the district court's perception that Wolf Crane failed to respond to the motion.[6] It is apparent that the district court did not examine the merits of this case, but instead granted summary judgment by default merely because it believed Wolf Crane had filed no response.[7]

---

[6] Because of our disposition with respect to this Count II, we need not address Wolf Crane's argument that its cross-motion for summary judgment did in fact constitute a response to the Pension Fund's motion, and thus that the district court's perception of no response was mistaken.

[7] In denying Wolf Crane's motion for reconsideration, the district court used language suggesting that the court may have been influenced in denying reconsideration by factors other than, or in addition to, its perception that Wolf Crane did not respond to the Pension Fund's motion for summary judgment. Although we do not foreclose consideration on remand that default may be appropriate for other reasons, we decline for several reasons to affirm the district court's judgment on such other grounds (e.g., it is clear that the default was granted on August 9, 2002 because of the perceived failure to file a response; it does not appear that Wolf Crane was given notice that default was being considered, <u>see</u> Fed.R.Civ.P. 55; the district court's explanation is inadequate and does not indicate that default was a measure of last resort, <u>see</u> <u>Graves v. Kaiser Aluminum & Chem. Co.</u>, 528 F.2d 1360, 1361 (5th Cir. 1976) ("This court

11

Because summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment, we vacate the judgment of the district court with respect to Count II.

For the foregoing reasons, we vacate the judgment of the district court both with respect to Count I and with respect to Count II, and remand for further proceedings not inconsistent with this opinion.

VACATED AND REMANDED.

---

has recognized that a dismissal with prejudice is a serious remedy that may be resorted to only in extreme situations where there is a clear record of delay or contumacious conduct by the plaintiff.")).

FAY, Circuit Judge, concurring:

I enthusiastically join in the opinion of Judge Anderson. Although we find it unnecessary to discuss, there is no doubt in my mind that a cross motion for a summary judgment on the same claim serves as a response in opposition to a motion for summary judgment filed by an adversary. It is easy to understand the district court's frustration with counsel for Wolf Crane and some form of sanctions may have been appropriate. However, as we have held, summary judgment is not an appropriate sanction and in this case there was a cross motion for summary judgment on this same claim which I would hold is a response in opposition.

With these observations, I concur.