**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**January 5, 2007**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

)))))))))))))))))))))))))))

No. 06-40321

)))))))))))))))))))))))))))

TECHNICAL METALLURGICAL SERVICES, INC.,

Plaintiff-Counter Defendant-Appellant,

versus

PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND,

Defendant-Counter Claimant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Texas
No. 5:04-CV-230

---

Before SMITH, BENAVIDES, and PRADO, Circuit Judges.

PER CURIAM:[*]

This lawsuit arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 *et seq.* Plaintiff-Appellant Technical Metallurgical Services, Inc. ("TMSI"), contends that Defendant-Appellee Plumbers and Pipefitters National Fund ("the Fund")

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

improperly assessed withdrawal liability in the amount of $125,336 against it.[1]  The only issue before the court is the date of TMSI's complete withdrawal from the Fund.  If TMSI completely withdrew from the Fund on June 30, 2002, then it owes no withdrawal liability.  However, if TMSI completely withdrew on July 1, 2002, as the Fund contends, then it owes the Fund $125,336.  We AFFIRM the order of the district court because we hold that TMSI completely withdrew from the Fund on July 1, 2002.

## I. FACTUAL AND PROCEDURAL HISTORY

TMSI is a mechanical contractor incorporated in Arkansas and registered to do business in Texas.  The Fund is a multi-employer fund as defined by ERISA.  See 29 U.S.C. § 1002(3) and (37).

On or about July 1, 2000, TMSI entered into a collective bargaining agreement ("CBA") with Local 237 of the United Association of Plumbers and Pipefitters ("Local 237").  In relevant

---

[1]Under the MPPAA, withdrawal liability is an employer's:
    proportionate share of the plan's unfunded vested benefits, that is, the difference between the present value of vested benefits (benefits that are currently being paid to retirees and that will be paid in the future to covered employees who have already completed some specified period of service, 29 U.S.C. § 1053) and the current value of the plan's assets.
Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 609 (1993) (citations omitted) (interpreting 29 U.S.C. §§ 1381, 1391).  For the plan year at issue in this case, the Fund had unfunded vested benefits in the amount of $542,797,204.

part, the CBA stated that it would be "*in full force and effect between [Local 237] and the Contractors from July 1, 2000, through June 30, 2002* and it shall continue in full force and effect from year to year thereafter between the Union and the Contractors . . . ." (Emphasis added). Additionally, the CBA stipulated that "[t]he expiration date of the present Collective Bargaining Agreement between the undersigned parties is June 30, 2002."

In the spring of 2002, Local 237 and TMSI began negotiations for an extension of the CBA, but the parties failed to reach an agreement. Friday, June 28, 2002, was the last day that TMSI employed workers under the CBA. On or about August 14, 2003, the Fund sent a letter to TMSI advising that TMSI was subject to withdrawal liability. On or about September 2, 2003, TMSI responded and disputed that it owed any withdrawal liability.

As required by 29 U.S.C. § 1401(a)(1), TMSI initiated arbitration challenging the Fund's assessment of withdrawal liability. The arbitrator decided that TMSI withdrew from the Fund on July 1, 2002, and thereby owed withdrawal liability.

TMSI then challenged the arbitrator's decision in district court. See 29 U.S.C. § 1401(b)(2) (allowing any party to challenge an arbitrator's decision in federal district court). The parties filed cross-motions for summary judgment, which were referred to a magistrate judge for report and recommendation. The district court

3

adopted the magistrate's report and recommendation finding that TMSI owed withdrawal liability because it completely withdrew from the Fund on July 1, 2002.  TMSI appeals this decision.

## II. STANDARD OF REVIEW

This court reviews the district court's summary judgment order de novo, using the same standards applied by the district court. Dallas County Hosp. Dist. v. Assocs. Health & Welfare Plan, 293 F.3d 282, 285 (5th Cir. 2002) (reciting the familiar summary judgment standards).

The determination of the date of complete withdrawal is a mixed question of law and fact.  Concrete Pipe, 508 U.S. at 630.  Here, the parties stipulated to the facts before the arbitrator, so there remains only a question of law.  All circuits that have considered the issue have decided that an arbitrator's conclusions of law under the MPPAA are reviewed de novo.  See e.g., Trs. of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs v. Wolf Crane Serv., Inc., 374 F.3d 1035, 1038 (11th Cir. 2004).

## III. DISCUSSION

The MPPAA defines when an employer experiences a "complete withdrawal" that gives rise to withdrawal liability.  Under the MPPAA, 29 U.S.C. § 1383(a), "a complete withdrawal from a multiemployer plan occurs when an employer –– (1) permanently ceases

4

to have an obligation to contribute to the plan . . . ."[2]  The statute defines "obligation to contribute" as an "obligation to contribute arising . . . under one or more collective bargaining (or related) agreements."  29 U.S.C. § 1392(a).  Finally, the MPPAA defines the date of complete withdrawal, in pertinent part, as "the date of the cessation of the obligation to contribute."  Id. § 1983(e).  The parties dispute when TMSI's obligations to contribute to the Fund ceased under the CBA.

TMSI argues that it completely withdrew from the Fund on June 30, 2002, because the CBA states that "[t]he *expiration* date" of the CBA "is June 30, 2002." (Emphasis added).  TMSI urges that its interpretation of the CBA gives effect to all of the CBA's provisions.  Accordingly, TMSI contends that its reading of "expiration date" does not render the "through June 30, 2002" language meaningless because legal documents are effective "through" their expiration date.

The Fund focuses on language in the CBA which states that the Agreement "shall be in full force and effect . . . from July 1, 2000 *through* June 30, 2002." (Emphasis added). TMSI, according to the Fund, still had an obligation to contribute to the Fund on June 30, 2002, until that day ended.  Therefore, TMSI did not completely withdraw from the Fund until July 1, 2002, the first day on which

---

[2] There are additional requirements for a complete withdrawal for an employer in the building and construction industry--TMSI is such an employer--but those requirements are not at issue in this case.  See 29 U.S.C. § 1383(b) (listing additional requirements).

TMSI did not have an obligation to contribute to the Fund. The Fund contends that the expiration date is not dispositive of complete withdrawal. The Fund maintains that TMSI's reading of "expiration date" would impermissibly negate the CBA's "through June 30, 2002" language.

Application of the MPPAA to the facts of this case requires this court to conclude that TMSI completely withdrew from the Fund on July 1, 2002. The CBA states that TMSI had an obligation to contribute "through June 30, 2002." TMSI could not have ceased to have an obligation to contribute on June 30, 2002, because the plain meaning of "through" is that TMSI had an obligation to contribute up to and including that day. Reading the "through" language this way would not render the "expiration date" language meaningless. For example, if John Doe's driver's license expires on December 31, 2008, John Doe would still be able to drive legally on that day. Similarly, though the CBA expired on June 30, 2002, TMSI still had an obligation to contribute on that day. See Parmac, Inc. v. I.A.M. Nat'l Pension Fund Benefit Plan A, 872 F.2d 1069 (D.C. Cir. 1989) (similarly interpreting the MPPAA). Thus, TMSI completely withdrew from the Fund on July 1, 2002, because that was the first day that it ceased to have an obligation to contribute to the Fund.[3]

---

[3] In the last sentence of its brief, the Fund requested an award of costs and attorney's fees under 29 U.S.C. §§ 1401(b)(2), 1451(e). Though the Fund argues that it raised the attorney's fee issue below in its Prayer for Relief, nevertheless, the Fund has forfeited this argument because it has been inadequately briefed on appeal. See L & A Contracting Co. v. S. Concrete Servs., Inc., 17

## IV. CONCLUSION

For the reasons stated above, we AFFIRM the order of the district court.

AFFIRMED.

---

F.3d 106, 113 (5th Cir. 1994).