William S. BRANDON, Plaintiff,

v.

LOCKHEED MARTIN AERONAUTI-
CAL SYSTEMS and International As-
sociation of Machinists and Aerospace
Workers, Local Lodge 709, AFL–CIO,
Defendants.

Civil Action No. 1:04–CV–2162–RLV.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 29, 2005.

William S. Brandon, Taylorsville, GA, pro se.

Joshua H. Viau, Richard M. Escoffery, Stanford Glenn Wilson, Elarbee Thompson Sapp & Wilson, James D. Fagan, Jr., Megan Elizabeth Gideon, Stanford & Fagan, Atlanta, GA, for Defendants.

## ORDER

VINING, Senior District Judge.

 After carefully considering the report and recommendation of the magistrate judge, together with the objections thereto, the court receives it with approval and adopts it as the opinion and order of this court with the following addition. In discussing the plaintiff's claim under the Americans with Disabilities Act. 42 U.S.C. § 12101, *et seq.*, the magistrate judge said, "Thus to establish a prima facie case under the ADA, the plaintiff must show that he (1) is disabled; (2) is a qualified individual; and (3) was subjected to unlawful discrimination because of his disability. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir.1999); *see also Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1149–50 (11th Cir.2005)." *Id.* at 1155–56. The court adds the following footnote to that citation:

The Eleventh Circuit, starting with *Morisky v. Broward County*, 80 F.3d 445 (11th Cir.1996), has consistently formulated the third prong in this manner. *See, e.g., Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220 (11th Cir.1999) ("was subjected to unlawful discrimination because of her disability"); *Maynard v. Pneumatic Products Corp.*, 233 F.3d 1344 (11th Cir.2000) ("he was discriminated against because of his disability"); *Collado v. United Parcel Service Co.*, 419 F.3d 1143 (11th Cir.2005) ("was discriminated against based on his disability"). This, of course, is incorrect because if a plaintiff has proved that he was discriminated against because of his disability, he has actually proved his entire case (and he is entitled to have judgment entered in his favor), not simply made a prima facie showing. The third prong should be a showing of adverse employment action— the same as in other discrimination suits. This error began when *Morisky* formulated the three-prong test and then cited *Tyndall v. National Education Centers*, 31 F.3d 209, 211 (4th Cir.1994) in support. However, *Tyndall* formulated this three-prong test as a method by which a plaintiff could establish that 42 U.S.C. § 12112(a) had been violated (and, thereby, win his case), not as a way of presenting a prima facie case. Because of *Morisky's* improper citation to *Tyndall* and because the Eleventh Circuit has failed to correct this error, a plaintiff, seemingly, has the burden of proving his entire case as part of his prima facie case. (If a plaintiff has actually "proved he was discriminated against because of his disability," *ipso facto*, there can be no legitimate, nondiscriminatory reasons for the employer's actions.) However, the purpose

of a prima facie case is merely to present facts from which an inference of discrimination can be made. Despite the way that the Eleventh Circuit has articulated this prong of the test, that court has never applied the prong as stated. Instead, the Eleventh Circuit has simply required a plaintiff to present facts from which an inference of discrimination can be made (as is true in all other discrimination cases). This court, following the practice of the Eleventh Circuit, if not the language of the Eleventh Circuit, will not require a plaintiff to prove discrimination as part of his prima facie case; instead, the court will require only that he show that adverse employment action was taken. (The undersigned notes that he had the opportunity to correct this misstatement of the third prong but, regrettably, neglected to do so. *See Gordon v. E.L. Hamm & Associates, Inc.* 100 F.3d 907 (11th Cir.1996).)

SO ORDERED, this 29th day of September 2005.

### FINAL REPORT & RECOMMENDATION

JOHNSON, United States Magistrate Judge.

Plaintiff *pro se,* William S. Brandon, worked for defendant Lockheed Martin Corporation (hereafter "Lockheed"). He is a member of a bargaining unit represented by defendant International Association of Machinists and Aerospace Workers, Local Lodge 709, AFL–CIO (hereafter "Local 709"). Following a force reduction at Lockheed that led to his layoff, plaintiff *pro se* filed this suit [1], asserting that Lockheed discriminated against him on the basis of an alleged disability (monocular

vision) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983; retaliated against him; created a hostile working environment for him; and conspired with Local 709 to violate his civil rights. Plaintiff's claims against Local 709 are conspiracy and the union's breach of its duty of fair representation with regard to the conduct on which his employment discrimination claims against Lockheed are predicated. *See* Compl. [1], Count I, ¶¶ 9–11, 13–15.

This matter is now before the Court upon Motions for Summary Judgment filed by Local 709[37] and Lockheed [39]. For the reasons explained below, the undersigned **RECOMMENDS** that said Motions be **GRANTED**.

### I. *Statement of Facts*

As required by Local Rule 56.1(B)(1), both movants submitted briefs supporting their respective motions for summary judgment. *See* Brief in Support of Local Lodge 709's Motion for Summary Judgment [37]; Defendant Lockheed Martin Aeronautical Systems' Memorandum in Support of its Motion for Summary Judgment [40]. Local Rule 56.1(B)(2) requires plaintiff *pro se* to submit a responsive brief. He failed to do so. That failure leaves defendants' legal arguments unaddressed. "When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." *Hudson v. Norfolk S. Ry. Co.,* 209 F.Supp.2d 1301, 1324 (N.D.Ga.2001) (citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.1995) (en banc)); *see also Bute v. Schuller Int'l Inc.,* 998 F.Supp. 1473, 1477 (N.D.Ga.1998) ("Because plaintiff has failed to respond to this argument or oth-

erwise address this claim, the Court deems it abandoned.").

■ Despite plaintiff *pro se*'s default on his obligation to file a brief responding to the instant motions for summary judgment, the Court cannot simply recommend entry of summary judgment. Instead, the merits of the motions must be considered. *See United States v. 5800 SW 74th Ave.,* 363 F.3d 1099, 1101 (11th Cir.2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion."). This is because Fed.R.Civ.P. 56(e) provides that, where " 'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.' " *Id.* (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court defined "appropriate" as a situation where the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* (quoting Fed.R.Civ.P. 56(c)); *see also Trs. of Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Employers v. Wolf Crane Serv., Inc.,* 374 F.3d 1035, 1039 (11th Cir.2004) (per curiam).

Thus, the Court must review the record to determine whether, despite that default, entry of summary judgment is appropriate because no disputed issues of material fact remain for trial. In this District, the process for separating disputed from undisputed material facts is governed by Local Rule 56.1(B). In compliance with Local Rule 56.1(B)(1), defendants as movants filed separate statements of undisputed, material facts. *See* Local 709's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment [37] (hereafter "Local 709's SUMF"); Defendant Lockheed Martin Aeronautical Systems' Statement of Material Facts as to Which There is no Genuine Issue to be Tried [41] (hereafter "Lockheed's SUMF").

Local Rule 56.1(B)(2)(a) requires the opposing party to submit a response to a movant's statement of undisputed material facts. Plaintiff *pro se* complied with that requirement. *See* "Plaintiff William S. Brandon Statement of Objections for Motion of Summary of Judgement" [sic][45] (containing twenty-four paragraphs and likely responding to Local 709's SUMF, which has twenty-six paragraphs) (hereafter "Pl.'s Resp. to Local 709's SUMF"); "Plaintiff William S. Brandon Statement of Material Facts that There Is a Genuine Issue to Be Tried" [45] (containing thirty-two paragraphs and likely responding to Lockheed's SUMF, which also has thirty-two paragraphs) (hereafter "Pl.'s Resp. to Lockheed's SUMF").

■ However, plaintiff *pro se* failed to provide relevant citations to any record evidence supporting the factual statements found in those responses. Under the Local Rules, that failure has consequences. *See* LR 56.1(B)(2)(a)(2) ("This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1B.(1).").

Therefore, the Court must deem each movant's statement of undisputed, material facts to be admitted. *See Digioia v. H.*

*Koch & Sons, Div. of Wickes Mfg. Co.,* 944 F.2d 809, 811 n. 6 (11th Cir.1991) (per curiam) ("the facts as set out in [defendant's] concise statement of facts not at issue are deemed admitted" by operation of the Local Rules because they were not controverted); *Jones v. Gerwens,* 874 F.2d 1534, 1537 n. 3 (11th Cir.1989) ("[f]acts set forth in the Defendants' Statement of Undisputed Facts which are not controverted, are deemed admitted" pursuant to the Local Rules); *Barnett v. Leiserv, Inc.,* 968 F.Supp. 690, 692 n. 1 (N.D.Ga.1997) ("[T]he court ... deemed as admitted all of the material facts that were contained in Defendant's Statement [of Undisputed, Material Facts] that Plaintiff has failed to address or traverse."), *aff'd,* 137 F.3d 1356 (11th Cir.1998) (unpublished table decision).

■■■■ While courts show leniency to *pro se* litigants not enjoyed by counseled litigants, this leniency does not permit a court to serve as *de facto* counsel for a party or to overlook deficiencies in their filings. *GJR Invs., Inc. v. County of Escambia,* 132 F.3d 1359, 1369 (11th Cir. 1998). In addition, although the Court will liberally construe *pro se* pleadings, *pro se* litigants are still required to conform to the procedural rules. *See Wayne v. Jarvis,* 197 F.3d 1098, 1104 (11th Cir.1999); *see also Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. Nov.1981) (per curiam) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law."). Given that movants' factual statements are deemed admitted, the undisputed, material facts, discussed below, show that entry of summary judgment is appropriate.

### A. *Plaintiff's Eyesight and Work History*

When plaintiff was a child, he fell out of a tree and hit his head, damaging the optic nerve in his right eye. Lockheed's SUMF ¶ 1. He has vision only in his left eye ("monocular vision"). Local 709's SUMF ¶ 1. He describes the vision in his right eye as "poor." Lockheed's SUMF ¶ 1. While plaintiff is "essentially blind in the right eye," he has "normal correctable vision" in his left eye and visually functions normally, except that he lacks acute depth perception. *Id.* ¶ 2. Plaintiff drives, and his driver's license does not require him to wear corrective lenses. *Id.* ¶ 3. Plaintiff owns five motorcycles and has been riding almost every day for forty years, including many years as part of a motorcycle club. *Id.* ¶ 4.

Plaintiff has performed all types of work, including welding; cutting pulp wood; maintaining all types of heavy equipment; operating an electric locomotive; working in a labor gang; performing "all phases and trades of heavy construction"; building everything from swimming pools to power plants; and working as an auto mechanic, an air freight and power plant mechanic, and an aviation mechanic. Lockheed's SUMF ¶ 5. He has operated "[b]ackhoe[s], overhead cranes, friction rigs, front-end loaders, tuggers, forklifts, hydraulic cranes," and a variety of other types of heavy equipment. *Id.* (alteration in original). Plaintiff spends his free time in his hobby shop, repairing cars, motorcycles, tractors, and the like. *Id.* ¶ 6.

### B. *Plaintiff's Employment at Lockheed*

Lockheed recruited plaintiff for employment in 1985 through a vocational rehabilitation center in Cheyenne, Wyoming, where he had been receiving vocational rehabilitation because of his vision. Lockheed's SUMF ¶ 7. Mr. Brandon was first employed by Lockheed as an hourly work-

er on September 3, 1985. Local 709's SUMF ¶ 2. That remains his seniority date with Lockheed. *Id.* He initially worked as an assembly worker structures (classification number 542–3) at Lockheed's Marietta, Georgia, facility. Lockheed's SUMF ¶ 8.

When he started working at Lockheed, Mr. Brandon became part of the bargaining unit represented by Local 709. Local 709's SUMF ¶ 3. The Collective Bargaining Agreement ("CBA") between Lockheed and Local 709 that was in effect during the time period of Mr. Brandon's clams is attached as Exhibit 5 to plaintiff's deposition. *Id.* The date of hire (or "seniority date") of an hourly employee controls many of his rights in terms of order of being laid off when a surplus is declared and order of recall when workers are rehired. *Id.* ¶ 4. Over the course of his employment with Lockheed, Mr. Brandon experienced numerous layoffs and recalls, as do most hourly employees. *Id.* ¶ 5. Moreover, Mr. Brandon held several different classifications during his tenure at Lockheed. *Id.* ¶ 2.

### C. *Plaintiff's Movement to the F/A 22 Area*

In May 2000, plaintiff started working in a 606–3 position in the F/A–22 area,[1] that portion of the plant where Lockheed builds the F/A–22 Raptor aircraft. Lockheed's SUMF ¶ 9; Local 709's SUMF ¶ 6. Lockheed is required, as a condition of contracts it has with the U.S. Government, to take security measures to protect confidential information associated with the F/A–22 program. Lockheed's SUMF ¶ 11; Local 709's SUMF ¶ 6. Employees who work in the F/A–22 area are required, among other things, to obtain a security clearance from the Defense Industrial Security Clearance Office ("DISCO") of the U.S. Department of Defense. Lockheed's SUMF ¶ 11; Local 709's SUMF ¶ 6. Because plaintiff did not have a security clearance when he started working in the F/A–22 area, he was required to apply for one. Lockheed's SUMF ¶ 12. While his application was pending, plaintiff was allowed to work, under strict conditions, in a limited portion of the F/A–22 area. *Id.;* Local 709's SUMF ¶ 6.

### D. *Plaintiff's Security Infraction and Transfer*

Lockheed's Security Force found that plaintiff committed a security infraction on or about December 7, 2002, and withdrew his privilege to continue working in the F/A–22 area without a clearance. Lockheed's SUMF ¶ 13.[2] Plaintiff was transferred on or about January 7, 2003, to a 606–3 position in the C–130 area, where the C–130J Hercules (a large transport aircraft) is built—and where employees are not required to have security clearances. *Id.* ¶ 14; Local 709's SUMF ¶ 8.

Even though the transfer was to another 606 position, the job duties were different. Local 709's SUMF ¶ 8. Rather than using a Quackenbush drill, most of the drilling

---

1. The 606–3 position involved drilling holes in aircraft parts with a Quackenbush drill. Lockheed's SUMF ¶ 10. A Quackenbush drill is securely attached, or mounted, to the aircraft component before each hole is drilled. *Id.* Plaintiff was able to drill holes with the Quackenbush drill. *Id.*

2. According to Local 709, an issue arose as to whether Mr. Brandon properly followed the procedures for working in the area without a security clearance (donning a red vest and being escorted by a supervisor). He was issued an Employee Performance Notice on January 6, 2003. Local 709's SUMF ¶ 7.

on the C–130 had to be done with a free-hand drill. Lockheed's SUMF ¶ 15. When plaintiff reported for duty in the C–130 area, he informed the department manager, Gene Baxley, that he was unable to properly perform "free-hand[ ] counter-sinking and drilling," because of his vision limitations. *Id.* ¶ 16 (alteration in original).[3] Plaintiff had "a very hard time holding a drill straight" and "a lot of trouble" countersinking, resulting in crooked holes and elongated countersinks. *Id.* As a result, plaintiff requested that Mr. Baxley put him on another job "[w]here [he] could get away from the drill and the counter-sinking." *Id.* (alteration in original).

Mr. Baxley sought the assistance of Lockheed's Work Accommodation Committee ("WAC") to help place plaintiff into a position he could perform. Lockheed's SUMF ¶ 17. As part of its commitment to utilizing employees with physical limitations, Lockheed's WAC, which is composed of managers, labor relations representatives, nurses and others, helps place employees who are unable to perform their jobs because of physical limitations. *Id.* ¶ 18.

After Mr. Baxley brought plaintiff's situation to the WAC's attention in early January 2003, the committee met on approximately a weekly basis for several months discussing plaintiff's situation and trying to find an available position that he could perform. Lockheed's SUMF ¶ 19. During this time, to keep plaintiff employed, the WAC arranged for him to be placed in several temporary, transitional jobs. *Id.* ¶ 20; Local 709's SUMF ¶ 9. They also tried to place him in an electrical position.

Lockheed's SUMF ¶ 20. Finally, plaintiff was put "out pending placement" on or about March 27, 2003, while the WAC continued trying to place him. *Id.* ¶ 21; Local 709's SUMF ¶ 9.

### E. *Plaintiff's Grievances*

Mr. Brandon filed two grievances regarding his being put out pending placement, Grievance Numbers JF–2965 and JF 2995. Local 709's SUMF ¶ 10. Those grievances were filed on January 15, 2003, and March 31, 2003, respectively. *Id.* Local 709 Business Agent Jimmy Farist investigated the grievances and attempted to find work that Mr. Brandon could perform as a 606–3. *Id.*

### F. *Plaintiff's 2003 EEOC Charge*

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 1, 2003, alleging that Lockheed placed him "out pending placement" because of an alleged disability and failed to accommodate his alleged disability. Lockheed's SUMF ¶ 22; Local 709's SUMF ¶ 11 (Charge No. 110–2003–30567). The charge names only "Lockheed Martin" as a respondent. It alleges disability as the only basis for discrimination. Local 709 was not named as a party to that charge of discrimination, was not sent notice of the charge, and did not participate in the investigation of that charge. Local 709's SUMF ¶ 11.

Business Agent Farist was aware that Mr. Brandon's EEOC charge was pending, and, at Mr. Brandon's request, he wrote a letter dated April 28, 2003, documenting

---

**3.** According to Local 709, Mr. Brandon informed his supervisor that, because of his limited vision, he could not perform the duties of a 606 as required in that area be-cause he was at risk for damaging expensive parts. He could not drill with precision. Local 709's SUMF ¶ 8.

606 jobs he believed Mr. Brandon could perform. Local 709's SUMF ¶ 12. Mr. Brandon has no personal knowledge that Mr. Farist ever spoke to the EEOC about his charge. *Id.*

Mr. Brandon took Mr. Farist's letter and immediately faxed it to the EEOC's investigator, Ms. Althea Thompson. Local 709's SUMF ¶ 13. Mr. Brandon wrote Ms. Thompson's name and fax number on the bottom of the letter. *Id.* Mr. Brandon testified that Mr. Farist's letter gave leverage to the EEOC's efforts to settle his charge of discrimination. *Id.*

Plaintiff and Lockheed entered into a Negotiated Settlement Agreement with the EEOC on July 17, 2003, resolving his April 1, 2003 charge. Lockheed's SUMF ¶ 23; Local 709's SUMF ¶ 16. As part of the settlement, Lockheed returned plaintiff to work in a material-controller position (classification number 682–3) effective June 30, 2003, and paid him a lump sum of $3,400; in turn, plaintiff agreed not to file a lawsuit with respect to the allegations raised in his charge. Lockheed's SUMF ¶ 23; Local 709's SUMF ¶ 14.[4] Mr. Brandon and Lockheed were the only signatories to the EEOC settlement agreement. Local 709 was not a signatory to it. Local 709's SUMF ¶ 16.

### G. *The January 2004 Surplus*

In January 2004, Lockheed implemented a surplus (reduction in force), eliminating about twenty positions in five or six departments. Lockheed needed to reduce the number of employees in uncleared areas to help control costs for the F/A–22 and C–130 programs, which were under severe budgetary constraints. Lockheed's SUMF ¶ 24. The surplus was initiated by the department managers in the various departments involved, who submitted surplus declarations to the Labor Relations department, indicating the number of positions to be reduced in each classification. *Id.* ¶ 25. Steve Hamlin, the Senior Manager of Labor Relations, in accordance with the CBA, then selected the employees whose positions would be eliminated. Mr. Hamlin had no discretion in making the selections; rather, as required by the CBA, he made these selections solely on the basis of seniority. *Id.*

Plaintiff's position was not eliminated in the surplus. Lockheed's SUMF ¶ 26. The manager of a department in which plaintiff did not work, Peter Erath, however, eliminated a material-controller position in his department, which was held by an employee named Peggy Kuhn. *Id.* Under the terms of the CBA, surpluses are made on the basis of plant-wide seniority, meaning that, if the employee whose position was eliminated has more seniority than another employee (in any department) within her classification, she has the right to "bump" that employee from his or her position. *Id.* ¶ 27. In this case, Ms. Kuhn was in the same classification as, and had more seniority than, plaintiff; thus, under the terms of the CBA, she "bumped" him out of his material-controller position, resulting in his layoff. *Id.* ¶ 28.[5]

At about the same time as the surplus, Lockheed was reorganizing its warehouse

---

4. Local 709 asserts that there is no language in the settlement letter stating that Mr. Brandon waived his rights to be recalled to the 606 classification. Local 709's SUMF ¶ 15.

5. Local 709 describes plaintiff's layoff as follows. Mr. Brandon was working in Department 2221 with no security clearance. Local 709's SUMF ¶ 17. The manager of another department, Department 080F, determined that he needed an employee in the 682–3

activities, putting its classified information in one central location. Lockheed's SUMF ¶ 29. With this reorganization, Lockheed needed more material controllers with security clearances to handle the material. *Id.* In January 2004, Lockheed opened a requisition for a material controller with a security clearance. *Id.* ¶ 30. Plaintiff was not qualified for the position because he lacked a security clearance. *Id.*

Plaintiff remains eligible for recall on the basis of his seniority, and his recall rights are governed by the CBA. Lockheed's SUMF ¶ 31. Plaintiff's application for a security clearance remains pending at DISCO. *Id.* ¶ 32. If and when his security clearance is approved, plaintiff will be eligible for recall to additional positions. *Id.*[6]

### H. *Plaintiff's January 2004 Grievance*

On January 29, 2004, Mr. Brandon filed Grievance Number CRF04010008, which was initially handled by Business Agent Ron Fortenberry. Local 709's SUMF ¶ 21. This grievance is still open and presently being handled by Business Agent Steve Brown. *Id.*

Mr. Brandon concedes that a claim for reinstatement to the 682 position is a grievance and not really part of this lawsuit. Local 709's SUMF ¶ 22. This grievance is currently at Step 2 of the grievance process. *Id.* Mr. Brandon identified only grievances JF2965–2995 as being improperly handled by Local 709 in his sworn discovery responses. *Id.*

Mr. Brandon admitted that he had no personal knowledge of the rightfulness or wrongfulness of his January 2004 surplus. Local 709's SUMF ¶ 23. He characterized the basis for his claim as "scuttlebutt." *Id.* He also testified that he had no evidence that his January 2004 layoff was "orchestrated," as he claims in his lawsuit. *Id.*

Mr. Brandon contends that he still has recall rights to the 606 classification. Local 709's SUMF ¶ 24. In general, an individual continues to hold recall rights to any classification in which he has previously worked. *Id.* Lockheed has taken the position that Brandon waived his recall rights to the 606 classification when he entered into the grievance settlement that allowed his return to work as a 682. *Id.*

### I. *Plaintiff's 2004 EEOC Charge*

On January 20, 2004, Mr. Brandon filed EEOC Charge No. 110–2004–01394, again naming only "Lockheed Martin" as a respondent, but this time alleging retaliation as the basis for discrimination. Local

---

classification with a seniority clearance. *Id.* Two individuals in the 682–3 classification were moved, which resulted in Mr. Brandon being laid off on January 13, 2004. *Id.* ¶ 18. Those two individuals were P. Kuhn, with a seniority date of March 18, 1985, and M. Lathem, with a seniority date of October 17, 1983. Both of these employees were senior to Mr. Brandon. Mr. Lathem has a seniority clearance. *Id.* Mr. Lathem moved into department 080F on January 17, 2004, because she had a security clearance. *Id.* ¶ 19. This move bumped P. Kuhn out of Department 080F. P. Kuhn, being more senior than Mr.

Brandon, then displaced Mr. Brandon, as he was the lowest-seniority, uncleared employee in the 682–3 classification. *Id.*

6. Neither Lockheed nor Local 709 participates in the processing of security clearances. Local 709's SUMF ¶ 20. The federal government, through DISCO, is entirely responsible for the processing of security clearances. The CBA states that the union may not grieve the denial of a security clearance. *Id.* (citing CBA, Part B, Article I, Section 12).

709's SUMF ¶ 25. Local 709 never received notification of this charge of discrimination, did not participate in the investigation, and did not receive a copy of the Dismissal and Notice of Rights (right-to-sue letter). *Id.* Mr. Brandon has no evidence that Local 709 was contacted about this EEOC charge. *Id.*

### J. *The CBA's Provision on Disabled Employees*

Part B, Article IV, Section 5 of the current CBA contains the following provision:

> Physically handicapped employees (blind, those who are deaf and mute, or have similar disabilities) may be retained or reinstated regardless of the seniority principles stated in this Article in accordance with such mutual agreement as hereafter may be entered into between the Company and the Union.

Local 709's SUMF ¶ 26. Mr. Brandon testified that he was aware that this language has never been entered into or followed by Lockheed. *Id.* Mr. Brandon testified that he had no evidence of any disabled or non-disabled individual who was returned to work out of seniority order. *Id.*

### II. *Summary Judgment Standard*

Summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice–Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir.2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106

S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

The non-moving party then "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (non-movant then required "to go beyond the pleadings" and present competent evidence in form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial"). Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If in response the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *Rice–Lamar*, 232 F.3d at 840. "In determining whether genuine issues of material fact exist, [the Court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Id.* (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513); *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir.1994) ("Once the moving party has met its initial burden by negating an essential element of the non-moving party's case, the burden on summary judgment shifts to the non-moving party to show the existence of a genuine issue of material fact. For issues on which the non-moving party will bear the burden of proof at trial, the non-moving

party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.") (citation and quotation marks omitted).

In deciding a summary judgment motion, the court's function is not to resolve issues of material fact but rather to determine whether there are any such issues to be tried. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511–12. The applicable substantive law will identify those facts that are material. *Id.* at 248, 106 S.Ct. at 2510. Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. *Id.* Genuine disputes are those in which "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* For factual issues to be "genuine," they must have a real basis in the record. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). When the record as a whole could not lead a rational trier of fact to find for the non-movant, there is no "genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356.

### III. *Analysis*

#### A. *Summary Judgment Should Be Entered for Lockheed on Plaintiff's Disability Discrimination Claims*

##### 1. *Plaintiff Cannot Sue Lockheed for Disability Discrimination Under Title VII, § 1981 or § 1983*

■ Plaintiff brought his disability discrimination claims against Lockheed under Title VII and 42 U.S.C. §§ 1981 and 1983, instead of under the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").[7] However, a disability discrimination claim cannot be brought under either Title VII or § 1981. *See Shotz v. City of Plantation*, 344 F.3d 1161, 1177–80 (11th Cir.2003) (finding that "Congress did not specifically contemplate that individuals could sue under §§ 1981 or 1983 for ADA violations" but ultimately concluding that an individual may be sued privately in his or her personal capacity for violating the ADA's anti-retaliation provision in the public services context); *Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 953 n. 11 (N.D.Ga. 1995). Thus, summary judgment should be entered for Lockheed on plaintiff's Title VII and § 1981 claims.[8]

■ Moreover, plaintiff cannot proceed against Lockheed under § 1983. Alleged violations of plaintiff's federal rights must have occurred under "color of state law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941)). "The statutory 'under color of law' requirement is equivalent, although not identical, to the constitutional doctrine of state action."

---

7. By use of the phrase "disability discrimination claims," the Court is describing plaintiff's allegations that he was discriminated against because of his disability and because Lockheed failed to accommodate his disability.

8. If the Complaint can be read as containing disability discrimination claims against Local 709 under Title VII and/or § 1981, then they should be dismissed for the reasons expressed in the text preceding this note.

Cobb v. Ga. Power Co., 757 F.2d 1248, 1250 (11th Cir.1985). Only when a private party acting either jointly with or through state officials becomes so allied with the state as to characterize that party as a "state actor" for purposes of the Fourteenth Amendment is the private party held to have acted under color of state law. *Kraft v. Mem'l Med. Ctr., Inc.*, 807 F.Supp. 785, 787–88 (S.D.Ga.1992). None of these situations applies here to Lockheed, which is a private employer. Plaintiff has not alleged that Lockheed engaged in any joint action with a state official. In any event, "a plaintiff may not maintain a section 1983 action in lieu of-or in addition to-a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA." *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir.1997). "To permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple." *Id.* Therefore, summary judgment should be entered for Lockheed on plaintiff's § 1983 claim.[9]

### 2. *Plaintiff's ADA Claims Fail as a Matter of Law*

In an effort to assist this *pro se* litigant, the Court will assume that plaintiff intended to sue Lockheed under the correct statute—the ADA. However, even applying the correct statute fails to save plaintiff's disability discrimination claims from summary judgment, given Lockheed's myriad defenses.

■ For example, some of Mr. Brandon's claims are barred by the release plaintiff signed. Specifically, plaintiff *pro se* alleges that Lockheed failed to accommodate his alleged disability and put him "out pending placement" because of his disability. However, plaintiff *pro se* filed a charge containing similar allegations on April 1, 2003. He subsequently signed a settlement agreement releasing those claims, and, in exchange, Lockheed returned him to work and paid him $3,400. Thus, Mr. Brandon cannot pursue those claims now. *Kirby v. Dole*, 736 F.2d 661, 664 (11th Cir.1984) (per curiam) ("[O]ne who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle."). Accordingly, summary judgment should be entered for Lockheed on similar disability discrimination claims raised here because plaintiff *pro se* signed a release.

■ Additionally, Lockheed is entitled to summary judgment on any other disability discrimination claims that plaintiff may have alleged here because he never brought them before the EEOC. Ordinarily, every employee who intends to sue for discrimination must first file an administrative charge with the EEOC. *See Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1239 (11th Cir.), *cert. denied*, 543 U.S. ——, 125 S.Ct. 656, 160 L.Ed.2d 496 (2004). "The filing of a charge of discrimination with the EEOC initiates 'an integrated, multi-step enforcement procedure' that enables the EEOC to detect and remedy various discriminatory employment practices." *Id.* at 1238 (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 62, 104 S.Ct. 1621, 1627, 80

---

**9.** Again, if the Complaint can be read as containing a disability discrimination claim against Local 709 under § 1983, then it should be dismissed for the reasons expressed in the text preceding this note.

L.Ed.2d 41 (1984)). This multi-step process includes "(1) prompt notice from the EEOC to the employer that a charge has been filed; and (2) investigation of the charge by the EEOC." *Id.* at 1239. The purpose of requiring litigants to first exhaust these administrative remedies is that the EEOC should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir.2004) (per curiam). As a result, a plaintiff's judicial complaint is limited by the allegations of his charge of discrimination or by "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1280 (quoting *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir.2000)); *see also Green v. Elixir Indus.*, 407 F.3d 1163, 1168 (11th Cir.2005) ("The proper inquiry, as these cases make clear, is whether the complaint is 'like or related to, or grew out of' the allegations in the EEOC charge."). Although courts allow claims in litigation that "amplify, clarify, or more clearly focus" allegations in the EEOC charge, *Gregory*, 355 F.3d at 1279–80, claims of discrimination not alleged in a charge are not permitted. *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir.1989).

■■■ Here, the only claim that plaintiff *pro se* raised in his January 20, 2004, EEOC charge was retaliation. Moreover, that charge only alleges retaliation arising out of a single event—his January 16, 2004, layoff. Accordingly, summary judgment should be entered for Lockheed on any other disability discrimination claims.

Even if plaintiff *pro se* had brought a disability discrimination claim under the ADA, and even if he had presented that claim to the EEOC, Lockheed would still be entitled to summary judgment because the undisputed, material facts show that (a) Mr. Brandon cannot establish a prima facie case of disability discrimination; (b) Lockheed has articulated legitimate, non-discriminatory reasons for his layoff; and (c) plaintiff *pro se* has no evidence that those reasons were pretextual.

■■■ The same burden-shifting analysis used in Title VII cases applies under the ADA.[10] Thus, to establish a prima facie case under the ADA, the plaintiff must show that he (1) is disabled; (2) is a qualified individual; and (3) was subjected to unlawful discrimination because of his disability. *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir.1999); *see also Collado v. United Parcel Serv., Co.*, No. 04–11297, slip op. at 14 (11th Cir.

---

10. When analyzing a disparate-treatment claim based upon circumstantial evidence, courts apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. Under this framework, the plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes this prima facie case, an inference of discrimination is raised, and the burden of production then shifts to the defendant to rebut that inference by articulating a legitimate, non-discriminatory reason for its action. This burden is "exceedingly light." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir.1997) (per curiam). If the

defendant meets this light burden, then the inference of discrimination is erased, and the burden then shifts back to the plaintiff "to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." *Id.* at 1565. Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

Aug.2, 2005). Several definitions must be consulted to apply that prima facie case.

For example, the ADA defines a disability as (a) a physical or mental impairment [11] that substantially limits [12] one or more major life activities [13] of an individual; (b) a record of such impairment; or (c) being regarded as having such an impairment. 42 U.S.C.A. § 12102(2) (West 1995); *see also Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 (11th Cir.1998); 29 C.F.R. § 1630.2(g) (2004). The statute defines a "qualified individual with a disability" as an individual with a disability who, with or without reasonable accommodation,[14] can perform the essential functions [15] of the employment position that such individual holds or desires. 42 U.S.C.A. § 12111(8) (West 1995); *see also* 29 C.F.R. § 1630.2(m) (2004).

██ Plaintiff *pro se* apparently claims that he is disabled because of his monocu-

lar vision. The basis of his claim would be that this problem interferes with the major life activities of seeing and/or working. The Supreme Court has held that monocular vision does not invariably cause a substantial limitation in the major life activity of seeing. *See Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566, 119 S.Ct. 2162, 2169, 144 L.Ed.2d 518 (1999). Moreover, the undisputed, material facts show that plaintiff's monocular vision has no impact on the major life activity of working. *See Standard*, 161 F.3d at 1327 ("Merely proving the existence of a physical impairment, without addressing any limitation on major life activities, is not sufficient to prove disability under the Act."); *Hilburn v. Murata Elecs. N. Am., Inc.*, 17 F.Supp.2d 1377, 1381–82 (N.D.Ga.1998) (granting summary judgment and dismissing ADA claim; plaintiff's ten-pound lifting restriction did not substantially limit any major life activity), *aff'd*, 181 F.3d 1220 (11th

---

11. Under the regulations, an "impairment" means (1) any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or (2) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. 29 C.F.R. § 1630.2(h) (2004).

12. One is "substantially limited" in a major life activity if he is unable to perform a major life activity that the average person in the general population can perform, or if he is significantly restricted as to the condition, manner or duration under which he can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j) (2004).

13. Major life activities are defined in the regulations as functions such as caring for one-

self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i) (2004). With respect to the major life activity of working, the term "substantially limited" means the inability to perform either a class of jobs or a broad range of jobs. The inability to perform a single particular job does not constitute a substantial limitation on the major life activity of working. *Id.* § 1630.2(j)(3)(i).

14. The term "reasonable accommodation" has many meanings, but in the context of this case, the term means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position." 29 C.F.R. § 1630.2(*o*)(ii) (2004).

15. The term "essential functions" means the "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n) (2004).

Cir.1999). There is also no evidence that Lockheed regarded plaintiff *pro se* as disabled.

 Even if it could be said that plaintiff *pro se* established a prima facie case, he was laid off as a result of an economically motivated surplus that affected several departments at the Marietta facility. He was selected on the basis of seniority in compliance with the terms of the collective bargaining agreement. This is a legitimate, non-discriminatory reason. Plaintiff *pro se* has presented no evidence that this reason was a pretext for illegal discrimination. Thus, summary judgment should be granted to Lockheed on Mr. Brandon's disability discrimination claim.

### B. Summary Judgment Should Be Entered for Lockheed on Plaintiff's Harassment Claim

 As noted above, plaintiff *pro se* never filed a charge with the EEOC accusing Lockheed of disability-based harassment. That failure alone requires entry of summary judgment for defendant. *See supra* Part III.A.2. But, even if plaintiff *pro se* had brought a disability-based harassment claim under the ADA, and even if he had brought such a claim before the EEOC, defendant would be entitled to summary judgment because he fails to establish a prima facie case. *See Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 582–83 (11th Cir.2000) (outlining elements of prima facie case in hostile-environment, sexual harassment case). In other words, he has not shown that he had a disability; that the alleged harassment was based on

a disability; that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive working environment; and a basis for holding Lockheed liable. Accordingly, summary judgment should be entered for Lockheed on this claim.[16]

### C. Summary Judgment Should Be Entered for Lockheed on Plaintiff's Retaliation Claim

 To establish a prima facie retaliation case, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events. *Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1460 (11th Cir.1998); *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1021 (11th Cir. 1994); *see also Gregory,* 355 F.3d at 1279. The causal link element is construed broadly so that " 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.' " *Olmsted,* 141 F.3d at 1460 (quoting *EEOC v. Reichhold Chems., Inc.,* 988 F.2d 1564, 1571–72 (11th Cir. 1993)). Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. *Id.; Meeks,* 15 F.3d at 1021. The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff. *Olmsted,* 141 F.3d at 1460; *see also Pennington v. City of*

---

**16.** The Court does not read the Complaint as making a disability-based harassment claim against Local 709. However, if such a claim can be drawn from plaintiff *pro se*'s pleading, then it is without merit for the same reasons that his disability-based harassment claim against Lockheed is without merit.

*Huntsville,* 261 F.3d 1262, 1266 (11th Cir. 2001).

▇▇ Plaintiff *pro se* contends that Lockheed laid him off on January 16, 2004, in retaliation for filing his earlier charge on April 1, 2003. Again, Lockheed is entitled to summary judgment on this claim. Assuming that plaintiff *pro se* brought this retaliation claim under the ADA (which he did not), he fails to establish a prima facie case or to show that defendant's legitimate, non-retaliatory reasons for his layoff are pretextual. There is no evidence that the decision-makers knew plaintiff *pro se* had filed an earlier EEOC charge. Moreover, even if they had known, it would have made no difference, as plaintiff *pro se*'s layoff was, as previously noted, part of an economically motivated surplus that was carried out in compliance with the terms of the CBA. Finally, the layoff was over nine months after Mr. Brandon filed his charge. "[W]here a substantial period of time has elapsed between the two events—engagement in the protected activity and the adverse employment action—the causal connection is less likely to exist absent evidence demonstrating a connection between the two events." *Breech v. Ala. Power Co.,* 962 F.Supp. 1447, 1461 (S.D.Ala.1997) (no causal connection after thirteen months elapsed between protected expression and adverse action), *aff'd,* 140 F.3d 1043 (11th Cir.1998) (unpublished table decision); *accord Gaines v. Suttles Truck Leasing, Inc.,* No. 98–0269–BH–M, 1999 U.S. Dist. LEXIS 11649, at *23 (S.D.Ala.1999) (no causal connection after five months elapsed between protected expression and adverse action); *Balletti v. Sun–Sentinel Co.,* 909 F.Supp. 1539, 1549 (S.D.Fla.1995) (no causal connection after six months elapsed between protected expression and adverse action); *Reeves v. Digital Equip. Corp.,* 710 F.Supp. 675, 677 (N.D.Ohio 1989) (no causal connection after three months lapsed between protected expression and adverse action). Because there is no probative evidence demonstrating a connection between Mr. Brandon's April 2003 charge and his layoff in January 2004, summary judgment should be entered for Lockheed on plaintiff *pro se*'s retaliation claim.

**D.** **Summary Judgment Should Be Entered for Defendants on Plaintiff's Conspiracy Claim**

Plaintiff *pro se* accuses Lockheed and Local 709 of conspiring to violate his federally protected rights under § 1983. However, as shown in Part III.A.1, *supra,* such a claim is inappropriate under that statute because neither Lockheed nor Local 709 is a state actor or acted under color of state law.

▇▇ The proper civil rights conspiracy statute is found at 42 U.S.C. § 1985(3).[17] Assuming plaintiff *pro se* intended to sue under that statute, in order to succeed on such a claim, he must show the existence of

"(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal

---

17. If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws

…, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C.A. § 1985(3) (West 2003).

privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."

*Denney v. City of Albany,* 247 F.3d 1172, 1190 (11th Cir.2001) (quoting *Lucero v. Operation Rescue,* 954 F.2d 624, 627 (11th Cir.1992)).

■■■ Plaintiff *pro se* has no proof that a conspiracy existed. Therefore, he cannot satisfy the first element of his claim. Moreover, given that Mr. Brandon "has no claim cognizable under the ADA," he has not been deprived of any right or privilege of a citizen of the United States and, thus, cannot satisfy the fourth element of his conspiracy claim. *McCauley v. Georgia,* 901 F.Supp. 336, 338 n. 2 (N.D.Ga.1994), *aff'd sub nom. McCauley v. Winegarden,* 60 F.3d 766 (11th Cir.1995) (per curiam). Accordingly, any conspiracy claim fails as a matter of law, requiring entry of summary judgment for defendants.[18]

### E. *Summary Judgment Should Be Entered for Local 709 on Plaintiff's Breach-of-Contract Claim*

■■■ As noted previously, plaintiff *pro se*'s claims with regard to Local 709

are essentially that the union breached its duty of fair representation with regard to the conduct on which his employment discrimination claims against Lockheed are predicated.[19] In order to hold Local 709 liable in this situation, plaintiff *pro se* must satisfy a two-prong test, including proof (1) that the union breached its duty of fair representation by allowing an alleged breach of the CBA to go unrepaired, i.e., by failing to pursue his grievance to arbitration, and (2) that Local 709's actions were motivated by discriminatory animus. *See Nweke v. Prudential Ins. Co. of Am.,* 25 F.Supp.2d 203, 221 (S.D.N.Y.1998); *Dawkins v. Nabisco Brands, Inc.,* No. 1:86–CV–1346–MHS, 1989 WL 61636, at * 7 (N.D.Ga. Jan.24, 1989).

The statute of limitations under the ADA—not the six-month statute of limitations for breach of duty of fair representation—controls. *Nweke,* 25 F.Supp.2d at 219. This means that plaintiff *pro se* needed to have filed a charge against Local 709 with the EEOC alleging disability discrimination within 180 days of an allegedly discriminatory act and then have filed suit within 90 days of receipt of a right-to-sue letter from that agency. *Lee v. ITT Stan-*

---

**18.** Plaintiff did not allege negligent infliction of emotional distress in his Complaint or discuss it in his deposition. However, he makes a passing reference to such a cause of action in the Complaint's prayer for relief. Although Lockheed addressed that claim in its Memorandum [40], the Court finds that, even if it could be said that plaintiff alleged such a claim, it has been abandoned and/or is not factually supported. Thus, the Court does not consider it herein.

**19.** "[A] union breaches its duty of fair representation if its actions are either 'arbitrary, discriminatory, or in bad faith' ...." *Air Line Pilots Ass'n, Int'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991) (quoting *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967)). To

state such a claim, plaintiff must establish that the union breached its duty of fair representation and that the employer violated the CBA. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). Although "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, ... the individual employee [does not have] an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." *Vaca,* 386 U.S. at 191, 87 S.Ct. at 917; *see also McCollum v. Bolger,* 794 F.2d 602, 611–12 (11th Cir.1986) (a union need not pursue a matter merely because an employee wishes it to do so).

*dard,* 268 F.Supp.2d 315, 336 (W.D.N.Y. 2002), *adopted in part,* 268 F.Supp.2d 356 (W.D.N.Y.2003); *see also* 42 U.S.C.A. § 12117(a) (West 1995) (adopting Title VII's charge-filing requirements). It is undisputed, however, that the only respondent named in either of Mr. Brandon's EEOC charges was Lockheed. Local 709 was never a party to either of those proceedings. "Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action." *Virgo v. Riviera Beach Assocs., Ltd.,* 30 F.3d 1350, 1358 (11th Cir.1994); *see also supra* Part III. A.2 (explaining policy behind administrative-exhaustion requirement). Thus, summary judgment should be entered against plaintiff *pro se* 's breach-of-contract claim for his failure to name Local 709 in a charge.

■ Nevertheless, the Court will analyze the merits of plaintiff *pro se* 's breach-of-contract claim. The undisputed, material facts show, however, that Mr. Brandon can satisfy neither of the above-listed elements of a "breach of contract" claim, because (1) Lockheed did not violate the CBA and (2) he has failed to present any probative evidence that Local 709 possessed any discriminatory animus against him. Moreover, any claim that Local 709 breached its duty of fair representation for failing to enforce Part B, Article IV, Section 5, of the CBA, quoted *supra* at Part I.J, should be rejected, given that the language of the provision is completely discretionary. Finally, the Court should also reject any claim that Local 709 breached the terms of the settlement agreement between plaintiff *pro se* and Lockheed, given that Local 709 was not a party to that document. Thus, summary judgment should be entered for Local 709 on this breach-of-contract claim.

## IV. *Defendants' Unfiled Motion to Dismiss*

■ Local 709 states that the parties are awaiting a ruling from the undersigned on plaintiff's failure to comply fully with the Omnibus Order [28] issued November 17, 2004. Local 709's Brief [37] at 2. Local 709 is apparently referring to comments made by defendants in their responses to a "motion" that plaintiff *pro se* served but never filed. *See* Lockheed's Resp. [30]; Local 709's Resp. [31]. Although the parties are correct that the Court has discretion to dismiss plaintiff *pro se* 's case for failure to comply fully with that earlier Order [28], neither defendant filed a motion to dismiss or for sanctions; accordingly, no such motion was docketed, and there is no pending motion on which the Court may rule.

## V. *Conclusion*

For the reasons explained above, the undersigned **RECOMMENDS** that the Motions for Summary Judgment [37, 39] filed by defendants be **GRANTED**.

The Clerk is **DIRECTED** to terminate the reference to the Magistrate Judge.

### *ORDER FOR SERVICE OF FINAL REPORT AND RECOMMENDATION*

Let this Final Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and the Court's Local Rule 72.1B, be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Final Report and Recommendation within ten days of the receipt of this Or-

der. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections are filed, the Final Report and Recommendation may be adopted as the opinion and order of the District Court, and any appellate review of factual findings will be limited to a plain error review. *United States v. Slay,* 714 F.2d 1093, 1095 (11th Cir.1983) (per curiam).

The Clerk is directed to submit the Final Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

August 4, 2005.